UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

TRE-VON D. DENNIS,

     Petitioner,

v.                                   Case No. 4:21cv231-WS-HTC

RICKY D. DIXON,[1]

     Respondent.

_____/

ORDER and
REPORT AND RECOMMENDATION

Petitioner, Tre-Von D. Dennis, proceeding *pro se* and *in forma pauperis*, filed a habeas petition under 28 U.S.C. § 2254 (ECF Doc. 1), seeking to vacate a judgment and sentence imposed by the Second Judicial Circuit in and for Leon County, after a jury found Petitioner guilty of premediated murder and premediated attempted murder during a drive-by shooting. ECF Doc. 10-1 at 31. The Court directed Respondent to respond to the petition and the Respondent filed a motion to dismiss the petition as untimely. ECF Doc. 10. The Petitioner filed a response in opposition,

---

[1] Ricky D. Dixon succeeded Mark S. Inch as Secretary of the Florida Department of Corrections and is automatically substituted as the respondent. *See* Fed. R. Civ. P. 25(d). The clerk is directed to update the case file information to reflect Ricky D. Dixon as the Respondent.

ECF Doc. 12, and subsequently filed an "amended petition," ECF Doc. 13, without first seeking leave to amend.

The matter was referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  For the reasons set forth below, the undersigned directs the clerk to strike the Amended Petition and respectfully recommends the Motion to Dismiss be GRANTED and the Petition be DISMISSED as untimely.

## I. THE PETITION WAS NOT FILED WITHIN THE ONE-YEAR FEDERAL TIME LIMIT

Under the Antiterrorism and Effective Death Penalty Act Of 1996 ("AEDPA"), a § 2254 petition must be filed within one year of certain "trigger dates."  28 U.S.C. § 2244(d)(1).  Here, the applicable trigger date is "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  *Id.* at § 2244(d)(1)(A).  Additionally, the limitations period is tolled for the time during which a "properly filed" application for postconviction relief or other collateral review is pending in state court.  28 U.S.C. § 2244(d)(2).

Petitioner filed a direct appeal of his judgment and sentence but did not seek United States Supreme Court certiorari review.  ECF Doc. 1 at 3.  Thus, Petitioner's conviction became final ninety (90) days after the First District Court of Appeal ("First DCA") issued its opinion affirming the judgment on January 9, 2017.  ECF

Doc. 10-5 at 4; First DCA Case No.: 1D15-4547); *see Bond v. Moore*, 309 F.3d 770, 773–74 (11th Cir. 2002) (holding a state prisoner's conviction becomes final when the U.S. Supreme Court denies certiorari, issues a decision on the merits, or when the 90-day period to file a petition for certiorari expires).  Therefore, the judgment became final on April 10, 2017 (the Monday after April 9, 2017).

No application for postconviction relief was pending until Petitioner filed a 3.850 motion on March 16, 2018, ECF Doc. 10-7 at 5.  By the time of that filing, 340 days ran on the AEDPA one-year clock.  That motion was continuously pending until the June 9, 2020, mandate of the First DCA affirming the denial of the 3.850 motion.  ECF Doc. 10-11.  Therefore, Petitioner had until July 6, 2020, (the Monday after the July 4 expiration date) to file a federal habeas petition.  Petitioner did not file the instant petition until May 28, 2021, more than 326 days later.

## II.    PETITIONER IS NOT ENTITLED TO EQUITABLE TOLLING

Petitioner does not dispute the petition is untimely.  Instead, he argues he is entitled to equitable tolling on the following grounds:  (1) he could not prepare his 3.850 motion because he could not get the appellate record on appeal from his direct appeal counsel until after he was forced to file a writ of mandamus; (2) he could not file a federal petition after affirmance of the denial of his 3.850 motion on June 9, 2020 because he did not receive a letter from counsel informing him of the affirmance and therefore did not learn of the affirmance until October 8, 2020; and

(3) the prison housing Petitioner had limited law library access as a consequence of the coronavirus pandemic and Petitioner relied upon inmate law clerks. The undersigned agrees with the Secretary that equitable tolling is not applicable.

The United States Supreme Court has held that the AEDPA's statutory limitations period may be tolled for equitable reasons. *Holland v. Florida* (*Holland II*), 560 U.S. 631, 645 (2010). However, "equitable tolling is an extraordinary remedy 'limited to rare and exceptional circumstances and typically applied sparingly.'" *Cadet v. Florida Department of Corrections*, 853 F.3d 1216, 1221 (11th Cir. 2017) (quoting *Hunter v. Ferrell*, 587 F.3d 1304, 1308 (11th Cir. 2009)). A petitioner is entitled to equitable tolling "only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland II*, 560 U.S. at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). The diligence and extraordinary circumstances requirements "are separate elements, both of which must be met before there can be any equitable tolling." *Cadet*, 853 F.3d at 1225.

In determining whether a petitioner has pursued his or her rights diligently, "[t]he diligence required . . . is reasonable diligence, not maximum feasible diligence." *Id.* at 1221 (quoting *Holland II*, 560 U.S. at 653, 130 S.Ct. 2549); *accord Smith v. Comm'r, Ala. Dep't of Corr.*, 703 F.3d 1266, 1271 (11th Cir. 2012) ("[D]ue diligence . . . does not require a prisoner . . . to exhaust every imaginable option, but

rather to make reasonable efforts." (alterations in original) (quoting *Aron v. United States*, 291 F.3d 708, 712 (11th Cir. 2002))).  "[T]he due diligence inquiry is an individualized one that must take into account the conditions of confinement and the reality of the prison system." *Smith*, 703 F.3d at 1271 (alteration in original) (quoting *Aron*, 291 F.3d at 712).

As to establishing an extraordinary circumstance, Petitioner must show a causal connection between the alleged circumstance and the late filing, *San Martin v. McNeil*, 633 F.3d 1257, 1268 (11th Cir. 2011), and the extraordinary circumstance must be "unavoidable even with diligence." *Sandvik v. United States*, 177 F.3d 1269, 1271-72 (11th Cir. 1999) (per curiam).  While the due diligence prong covers those affairs within the litigant's control, "the extraordinary-circumstances prong, by contrast, is meant to cover matters outside its control." *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 257 (2016) ("the second prong of the equitable tolling test is met only where the circumstances that caused a litigant's delay are both extraordinary and beyond its control.").

For the reasons which follow, Petitioner does not meet these standards for any of the three periods of tolling he seeks.

### A.    Period During Which He Sought Record on Appeal from Direct Appeal Appellate Counsel

Petitioner argues that, despite numerous requests, he did not receive the appellate record on appeal from his counsel until after he was forced to file a writ of

mandamus. ECF Doc. 1 at 13-14; ECF Doc. 12 at 2-4. As a result, he claims he was prevented from filing his initial 3.850 motion sooner. *Id.* The undersigned finds the Petitioner's inability to obtain the appellate record from his counsel does not constitute extraordinary circumstances necessary to warrant equitable tolling.

First, the Eleventh Circuit has held that "periods in which a prisoner is separated from his legal papers are not 'extraordinary circumstances' in which equitable tolling is appropriate." *See Akins v. United States*, 204 F.3d 1086, 1089–90 (11th Cir. 2000); *see also Dodd v. United States*, 365 F.3d 1273, 1282–83 (11th Cir. 2004) (holding equitable tolling not appropriate where petitioner was transferred to a different facility and detained there for over ten months without access to his legal papers, stating "*Akins* suggests that lockdowns and periods in which a prisoner is separated from his legal papers are not 'extraordinary circumstances' in which equitable tolling is appropriate."); *Paulcin v. McDonough*, 259 F. App'x 211, 213 (11th Cir. 2007) (holding lack of access to law library and legal papers for as much as ten months of one-year limitation period was not extraordinary, and petitioner failed to allege how lack of access thwarted his efforts to file a timely petition).

Second, as the Secretary points out, even without the appellate record, Petitioner could have filed a 3.850 motion well before March 2018, and before over 300 days had expired on the AEDPA clock. Florida Rule of Criminal Procedure 3.850 does not require movants to file supporting documentation to the motion; it

merely requires the movant to explain "the nature of the relief sought; and . . . a brief statement of the facts and other conditions relied on in support of the motion." Fla. R. Crim. P. 3.850(c). Indeed, "a 3.850 movant has the right to amend or supplement a motion at any time within the two-year time limit as long as the trial court has not yet ruled on the merits of the motion." *Hyacinthe v. State*, 940 So. 2d 1280, 1281 (Fla. Dist. Ct. App. 2006).

Petitioner admits in a letter to counsel dated March 17, 2017, that he was aware of "postconviction time limitations requirements, both State and Federal" and that he was aware counsel was not going to print out the record and send it to him. ECF Doc. 12-1 at 14. Nonetheless, instead of filing a 3.850 motion sooner in time, Petitioner waited until 340 days had passed on the AEDPA clock to do so. Given such a delay, Petitioner has shown neither due diligence nor extraordinary circumstances.

Third, Petitioner still had twenty-five (25) days after the First DCA issued its mandamus affirming the denial of the 3.850 motion to file the motion and undisputedly had the appellate record at that time. Petitioner, however, still missed the AEDPA deadline by over 300 days. Thus, once again Petitioner has not shown due diligence.

Finally, even if the Court applied equitable tolling until February 13, 2018, when Petitioner received the record, the petition nonetheless would be untimely

without further tolling. *See* Counsel Harrison's Resp. to Show Cause Order in that case, ¶ 14 (Feb. 13, 2018).[2] Thirty-one days expired on the AEDPA clock between that date and March 16, 2018, leaving 334 days on the AEDPA one-year limit. The 3.850 motion was pending until June 9, 2020, when the First DCA issued its mandate, meaning Petitioner would have had until Monday, May 10, 2021, to file the petition. Petitioner, however, did not file the petition until May 28, 2021.

Simply, Petitioner's lack of access to a printed copy of the appellate record[3] was not an "extraordinary circumstance [that] stood in his way and prevented timely filing" of the petition and Petitioner failed to exercise due diligence in meeting the AEDPA deadline. *See Holland II*, 560 U.S. at 649. Thus, this argument does not warrant the application of equitable tolling.

─────────────────

[2] A federal court may properly take judicial notice of state court dockets. *Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 652 (11th Cir.), *cert. denied sub nom. Paez v. Inch*, 141 S. Ct. 309 (2020); Fed. R. Evid. 201(b)(2). Federal Rule of Evidence 201 permits a court to "judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). "State court records of an inmate's postconviction proceedings generally satisfy this standard." *Paez*, 947 F.3d at 651-52.

However, the Court must provide and cite to an "accessible source" to allow (1) the Petitioner the "ability to dispute" the records relied upon and (2) the Eleventh Circuit the "ability to meaningfully review the source and accuracy" of the record relied upon by the District Court. *Id.* Therefore, the Eleventh Circuit recommends the "best practice would be to include copies of any judicially noticed records as part of the Order that relies upon them, so as to ensure the inmate receives them." *Id.* A copy of the February 13, 2018 response is therefore attached to this Report.

[3] It should be noted that appellate counsel prepared the record electronically on a thumb drive and offered to give both to Petitioner's family to print out. ECF Doc. 12-1 at 25. Counsel's principal argument in the mandamus action was that he never printed out a copy of the record in the case because it was available to Petitioner electronically and he was not required by Florida law to print out a copy at his own expense to give to Petitioner. *Id.*

**B.    Period Before 3.850 Appellate Counsel Informed Him That the First DCA Had Affirmed the Denial of His 3.850 motion**

Petitioner argues he is entitled to equitable tolling for the four (4) months during which he was unaware that the First DCA had issued a mandate affirming the denial of his 3.850 motion because appellate counsel failed to inform him of the affirmance of the denial of his 3.850 motion.  ECF Doc. 1 at 13-14; ECF Doc. 12 at 4-5.  Petitioner alleges he did not receive notice of that affirmance until counsel sent him a letter on October 8, 2020, telling Petitioner that counsel had attempted to send a letter to him in May 2020 informing Petitioner of the affirmance.  ECF Doc. 12 at 5.

To support this claim, Petitioner attached an *unsigned* affidavit purportedly from counsel that states, "My staff and I were quarantined at that time and were working remotely.  It is very possible that I inadvertently overlooked sending Mr. Dennis a letter informing him of the outcome of his case."  ECF Doc.  12-1 at 1.[4]  Even if the Court were to accept that affidavit as evidence, counsel's inadvertent failure does not constitute extraordinary circumstances justifying equitable tolling.

---

[4] The unsigned affidavit of Petitioner's 3.850 appellate counsel also suggests, "It is also quite possible that if a letter was sent to Mr. Dennis, that he did not receive it, which is something I have encountered frequently with my dealings with the Florida Department of Corrections."  ECF Doc. 12-1.  Petitioner offered no evidence supporting this speculative assertion, and "[s]uch generalized allegations are insufficient in habeas cases."  *Hittson v. GDCP Warden*, 759 F.3d 1210, 1265 n.62 (11th Cir. 2014).

Under agency principles, the client "bears the risk of negligent conduct on the part of his agent" and "the attorney is the prisoner's agent." *Thomas v. Att'y Gen.*, 992 F.3d 1162, 1182 (11th Cir. 2021) (citing *Maples v. Thomas*, 565 U.S. 266, 280 (2012)). Thus, negligence by counsel is imputed to Petitioner and does not constitute "'something *external* to the petitioner, something that cannot fairly be attributed to him[,]' [which] 'impeded [his] efforts to comply with the State's procedural rule'". *Thomas*, 992 at 1181 (quoting *Maples*, 565 U.S. at 280). As the Eleventh Circuit has specifically held, "garden-variety attorney negligence . . . and even gross negligence or recklessness" is not an "extraordinary circumstance" that will support equitable tolling. *Thomas v. Atty. Gen. of Fla.*, 795 F.3d 1286, 1291 (11th Cir. 2015); *see also Holland II*, 560 U.S. at 651-52 (a "garden variety" claim of excusable neglect, such as a simple miscalculation that causes a lawyer to miss a filing deadline, does not warrant equitable tolling). Rather, to justify equitable tolling, something more is required, such as attorney abandonment, *Maples v. Thomas*, 565 U.S. 266 (2012), or bad faith, dishonesty, divided loyalty, or mental impairment. *See Thomas*, 795 F.3d at 1294 (citing *Holland v. Florida*, 539 F.3d 1334, 1339 (11th Cir. 2008)).

That "something more" does not exist here. Plaintiff does not allege counsel's conduct was anything more than negligent. Therefore, Petitioner is not entitled to equitable tolling based on his failure to receive notice from his counsel that the denial

of his 3.850 motion had been affirmed. *See Wilkie v. United States*, No. 2019 WL 3413593, at *6 (M.D. Fla. July 29, 2019) ("But even if Wilkie's lawyer completely failed to notify him of the Eleventh Circuit's [adverse decision on direct appeal], that oversight seems more like garden-variety negligence, not the type of abandonment, or bad faith, dishonesty, divided loyalty, or mental impairment, that can constitute an extraordinary circumstance justifying equitable tolling.") (internal citations omitted).

## C.    Delay Due to Restricted Law Library Access During Covid-19 Pandemic

Petitioner argues he is entitled to equitable tolling because he is unskilled in the law, required law clerk assistance, and had limited access to the law library because of COVID-19 restrictions. ECF Doc. 1 at 14. In Petitioner's response, he alleges the institution housing him "was on complete lockdown for 12 months starting March 25, 2020." ECF Doc. 12 at 5. This also does not constitute extraordinary circumstances.

The Eleventh Circuit has held that prison lockdowns and restricted access to a law library or legal documents do not constitute extraordinary circumstances to warrant equitable tolling. *See Castillo v. United States*, No. 16-17028-E, 2017 WL 5591797, at *3 (11th Cir. May 4, 2017) (collecting cases); *Akins v. United States*, 204 F.3d 1086, 1089-90 (11th Cir. 2000); *Paulcin v. McDonough*, 259 F. App'x 211, 213 (11th Cir. 2007). Also, district courts within the Eleventh Circuit, including in

this District, "have declined to grant equitable tolling based on prison lockdowns due to Covid-19." *Phillips v. United States*, 2021 WL 679259, at *3 (M.D. Fla. Feb. 22, 2021) (citing *Moreno v. United States*, 2020 WL 7091088, at *2 (N.D. Ga. Sept. 18, 2020), *report and recommendation adopted*, 2020 WL 5939887 (N.D. Ga. Oct. 7, 2020); *United States v. Thomas*, No. 18-135, 2020 WL 7229705, at *2-3 (E.D. La. Dec. 8, 2020); *Franco v. United States*, 2021 WL 1546021, at *4 (M.D. Fla. Apr. 20, 2021)); *Rush v. Sec'y, Fla. Dep't of Corr.*, 2021 WL 3134763, at *1 (11th Cir. June 22, 2021) (explaining COVID-19 not an extraordinary circumstance because all prisoners attempting to access legal resources subject to COVID-19 protocols); *Harris v. Inch*, No. 3:20-CV-5890-MCR-MJF, 2021 WL 2384567, at *4 (N.D. Fla. Apr. 23, 2021), *report and recommendation adopted*, 2021 WL 2383719 (N.D. Fla. June 10, 2021) ("Harris does not show a causal connection between the lockdown and his ability to file his § 2254 petition by July 31, 2020."); *Hanf v. Inch*, No. 4:20CV330/TKW/EMT, 2021 WL 1251854, at *1 (N.D. Fla. Apr. 5, 2021) ("With respect to equitable tolling, the Court finds no record support for Petitioner's claim in his objections that COVID-19 restrictions on access to the prison law library "from [February 26, 2020] until and beyond March 31st" hampered his ability to timely file his petition."); *Webster v. Sec'y, Fla. Dep't of Corr.*, No. 3:20-CV-5727-MCR-MJF, 2021 WL 1566848, at *4 (N.D. Fla. Mar. 29, 2021), *report and recommendation adopted*, 2021 WL 1564321 (N.D. Fla. Apr. 21, 2021) ("Webster's

bare assertions regarding restrictions on access to the law library and his legal property during the COVID-19 pandemic are unavailing.").

The undersigned finds no reason to reach a different result here. Petitioner has not made any allegations that suggest the circumstances at his institution during the height of the COVID-19 pandemic were different from those at the institutions housing the petitioners in those cases. Moreover, Petitioner's reliance on *Dunn v. Baca* from the District of Nevada is misplaced because that is a case where the petition was timely filed and the petitioner, through appointed counsel, sought prospective equitable tolling of the time for filing an amended petition because of COVID-19 restrictions which prevented counsel from investigating the grounds for relief. *Dunn v. Baca*, 2020 WL 2525772 (D. Nev. May 18, 2020).

Regardless, an inmate has no right to inmate law clerk assistance, and an inmate's lack of legal knowledge, failure to understand legal principles and/or the inability to recognize potential claims for relief do not constitute extraordinary circumstances sufficient to warrant equitable tolling of the limitation period. *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) (*pro se* status and ignorance of the law do not justify equitable tolling); *Kreutzer v. Bowersox*, 231 F.3d 460, 463 (8th Cir. 2000), cert. denied, 534 U.S. 863 (2001); *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000), cert. denied, 531 U.S. 1194 (2001) (petitioner's *pro se* status and

ignorance of the law are insufficient to support equitable tolling of the statute of limitations).

Moreover, Petitioner admits he had access to "a few research items via institutional mail."  ECF Doc. 12 at 5.  Thus, he has failed to sufficiently explain why he could not have filed a timely petition.  *See Harris,* 2021 WL 2384567, at *4 (N.D. Fla. Apr. 23, 2021), *report and recommendation adopted*, 2021 WL 2383719 (N.D. Fla. June 10, 2021) ("Harris does not show a causal connection between the lockdown and his ability to file his § 2254 petition by July 31, 2020.").

For the above reasons, the undersigned finds equitable tolling to be inapplicable and, thus, the petition is untimely filed.

## III.    AMENDED PETITION

As stated above, in addition to responding to the motion to dismiss, Petitioner also filed an Amended Petition.  ECF Doc. 13.  As an initial matter, the amended petition, which comes more than twenty-one (21) days after the Secretary's motion to dismiss, is procedurally improper because Petitioner did not seek leave to file it.[5] *See* Fed. R. Civ. P. 15(a)(1)(B); Rules Governing § 2254 Cases, Rule 12 ("The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these

---

[5] Although Petitioner attached a "Letter to the Clerk" to his Amended Petition, ECF Doc. 13-1, which contained some argument and explanation concerning the Amended Petition, applying for relief by letter is not permitted by local rule.  N.D. Fla. Loc. R. 7.1(A).

rules."); *Rodriguez v. Att'y Gen., Fla.*, 813 F. App'x 426, 429 (11th Cir. 2020) (applying Fed. R. Civ. P. 15(a)(2) to effort by Petitioner to amend federal habeas petition).

Regardless, even had Petitioner moved for leave to amend, it would have been denied because, while leave to amend should be freely given "when justice so requires", Fed. R. Civ. P. 15(a)(2), the Court need not grant leave to amend when such amendment would be futile. *See Bryant v. Dupree*, 252 F.3d 1161, 1164 (11th Cir. 2001). Because the petition is untimely, any claims contained in the amended petition would also be untimely. Thus, the amended petition is futile. *See Casey v. Gordy*, 2021 WL 1853655, at *2 (11th Cir. May 6, 2021) ("Because the district court correctly concluded that Casey's § 2254 petition was time-barred, any amendment to the petition would be futile because it would be subject to dismissal as untimely."). The clerk will therefore be directed to STRIKE the amended petition.

## IV.  CONCLUSION

### A.  Evidentiary Hearing

The undersigned finds that an evidentiary hearing is not warranted. In deciding whether to grant an evidentiary hearing, this Court must consider "whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Additionally, this Court must account for the

deferential standards prescribed by § 2254. *See id.* Upon consideration, the undersigned finds that the claims in this case can be resolved without an evidentiary hearing. *See Schriro*, 550 U.S. at 474.

### B.    Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

After review of the record, the Court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the

attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is ORDERED:

1.    The clerk is directed to update the case file information to reflect Ricky D. Dixon as the Respondent.

2.    The clerk is directed to strike the Amended Petition, ECF Doc. 13.

Additionally, it is RECOMMENDED that:

1.    The Secretary's Motion to Dismiss, ECF Doc. 10, be GRANTED.

2.    The Petition under 28 U.S.C. § 2254, ECF Doc. 1, be DISMISSED WITH PREJUDICE AS UNTIMELY.

3.    A certificate of appealability be DENIED.

4.    The clerk be directed to close the file.

Done at Pensacola, Florida, this 6th day of January, 2022.

/s/ Hope Thai Cannon
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed **within fourteen (14) days** of the date of the Report and Recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to

challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.

## IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT, IN AND FOR LEON COUNTY, FLORIDA

TREVON DENNIS,

      Plaintiff,

vs.                        Case No. 2017-CA 002608

BAYA HARRISON, III,

      Defendant.

_____/

## DEFENDANT'S RESPONSE TO ORDER TO SHOW CAUSE

Defendant Baya Harrison, III responds to the court's January 19, 2018, order to show cause, stating:

1.     Mr. Dennis was charged with first-degree murder in Leon County Circuit Court Case No. 14-CF-1223. He was determined to be indigent. Counsel was assigned. He was convicted as charged after a jury trial and sentenced on October 2, 2015, to life in prison. A timely notice of appeal was filed.

2.     Mr. Dennis' trial counsel prepared the record on appeal in First District Court of Appeal Case No. 1D15- 4547. The Office of the Public Defender was appointed as appellate counsel, then withdrew. The Office of Regional Conflict Counsel was appointed and withdrew. I was appointed on February 24, 2016.

3.     I filed the initial brief of appellant on May 10, 2016,

providing Mr. Dennis with a paper copy.  An answer brief was filed

on September 19, 2016. The district court of appeal affirmed the

conviction, judgment and sentence on January 9, 2017.  The mandate

was issued on January 25, 2017.

4.     After being advised of the First DCA's actions in

affirming his judgments and sentences, Mr. Dennis through his

mother, asked me to provide him with paper copies of the pretrial,

trial and appellate documents filed in the trial court and in the

appellate court.  Mr. Dennis defines "copy" to mean a paper copy of

trial documents and the record on appeal ("the record") in 1D15-4547.

He would accept nothing less.  <u>See</u> his mandamus petition, pp. 3, 4.

Mr. Dennis listed the documents and things that he said wanted, to include:

> All pretrial discovery materials.
>
> All depositions, i.e., State and/or
> defense filed or transcribed, whether
> or not filed with the court;
>
> All correspondence to and from the Office
> of the State Attorney or other law enforcement
> agency;
>
> All pretrial pleadings filed with the Court;
>
> All post-trial pleadings filed with the Court;

Sentencing guideline scoresheets filed;

Pre-Sentence Investigation reports,

Medical Records, Evaluations, etc., of the Defendant
and/or victims(s);

Copies of recorded, written or typed statements
made by the defendant, (ie. Confession);

All other case related materials used to prepare
and represent this cause not considered as attorney
work product;

All records and documents in your possession.

See Ex. B attached to the mandamus petition, pp. 1, 2.

5.    Mr. Dennis is referring essentially to the materials that would

have been in the files of Mr. Dennis' trial attorney.  I never had this material

and I advised him accordingly.

6.    Mr. Dennis also demanded the "record on appeal" to include

the trial transcripts and other pleadings filed in 1D15-4547.   See the

mandamus petition, p. 4.   He incorrectly represented that I had these

documents in paper form.  He told the Florida Bar,  "as I am sure you are

well aware of, in order for my appellate attorney to perfect my appellate

brief, he must be in possession of my record on appeal."  See Ex. E attached

to the mandamus petition.  Dennis added incorrectly, that the undersigned

"was provided a copy of my record on appeal from the Lower Tribunal, and

he [Mr. Dennis is] entitled to a copy as well." <u>See</u> Mr. Dennis' June 26, 2017 letter to Mr. Charles Hughes of the Florida Bar included in the package of exhibits attached to Mr. Dennis' Bar complaint. The Bar complaint is attached as Ex. C to the mandamus petition. The June 26, 2017 letter is Ex. E attached to the Bar complaint. I again explained that I did not have the documents in paper form. Had I had the record on appeal in paper form I would have mailed it to him just as I have done in hundreds of other cases over the years.

7.      As of the time of my appointment, I could access the record on appeal electronically on line at the First DCA Clerk's Office website. I therefore wrote the brief by reference to the record on appeal in that format. (I did not know that there even was a paper copy.)

8.      There is no way that I would have left Mr. Dennis without a remedy in this situation. I contacted the DOC and was advised that Mr. Dennis could not have a CD of the record on appeal on security grounds. Had this been allowed, I would have put the record (on the First DCA website) on a CD and mailed the CD to Mr. Dennis at the prison. I also offered to send a CD that included the record on appeal to Mr. Dennis' family or anyone else he would authorize. Mr. Dennis would not accept this, insisting that I make paper copies of the record and mail them to him at

the prison. Had Mr. Dennis' demands not involved a great deal of paper material, even then I would have absorbed the cost and made the copies myself. But the record on appeal in 1D15-4547 was voluminous, consisting of some 1300 pages. It would have cost me out-of-pocket at least $450 in paper and toner expenses, not to mention labor costs, to generate a paper copy of the trial transcripts (by printing a copy of the record from the internet) even if I performed the copying myself. It would cost three times that amount if a paper copy of the trial transcripts (at $3 per page) was ordered from the court reporter and if I paid the $1-per-copy charged for pleadings and orders from the clerk's office. I was paid only $1500 by the state to handle the appeal.

9. When Mr. Dennis rejected my willingness to provide his family and the prison with a CD of the record, I bought a USB thumb drive and downloaded the entire record onto it. I then offered to send the thumb drive to Mr. Dennis and/or his family (and to the prison) at no expenses to them. See Ex. F attached to the mandamus petition. Mr. Dennis rejected this offer as well.

10. As stated above, in Mr. Dennis' Bar complaint, he makes a false statement by misrepresenting the language of Rule 4-1.16(d), Rules Regulating the Florida Bar, regarding an attorney's duty to provide a client

with certain materials at the conclusion of the representation.  Mr. Dennis

claims that the rule says that counsel must provide him with:

> All pretrial discovery materials. All depositions, i.e., State
> and/or defense filed or transcribed, whether or not filed with the
> court;  All correspondence to and from the Office of the State
> Attorney or other law enforcement agency; All pretrial
> pleadings filed with the Court; All post-trial pleadings filed
> with the Court; Sentencing guideline scoresheets filed; Pre-
> Sentence      Investigation reports, Medical Records,
> Evaluations, etc., of the Defendant  and/or victims(s); Copies of
> recorded, written    or typed statements made by the defendant,
> (ie. Confession); All other case related materials used to prepare
> and represent this cause not considered as attorney work
> product; All records and documents in your possession.

See Ex. B, p. 2, attached to the mandamus petition.

11.    Rule 4-1.16(d)   delineates in part with regard to what a lawyer

must provide the client at the conclusion of the representation: "Upon

termination of representation, a lawyer shall take steps to the extent

reasonably practicable to protect a client's interest such as . . . surrendering

**papers and property to which the client is entitled** . . ."  (Emphasis

added.)

12.    There is no other Bar rule that requires the undersigned to

generate paper records at his own expense so that he can provide them to the

client once the representation is terminated.

13.    Mr. Dennis cited the case of  Simmons v. State, 40 So. 3d

874 (3d DCA 2010) in support of this demand.   That case does not

stand for the assertion that Mr. Dennis claims it does.   This is because

in <u>Simmons</u> the record on appeal was not being accessed solely

electronically on line at that time.  On the contrary, the record that

Simmons was seeking was already in paper form and in the

possession of his attorneys.   The <u>Simmons</u> court said in that regard,

"(n)aturally, the attorneys may only be required to turn over

documents which actually exist and are in their possession."

<u>Simmons</u>, supra,  40 So. 3d at 875, emphasis added.

14.     As noted, I wrote Mr. Dennis' brief by accessing the

record on appeal on line.  I assumed that there was no paper copy.  I

recently checked with the Public Defender's Office.   That office did

not have a paper copy.  Then I check with the Regional Conflict

Counsel's Office, and that office had a paper copy.  I therefore went

to the office and got the paper record.  I then mailed it to Mr. Dennis

at Blackwater Correctional Institution.  Mr. Dennis now has the paper

copy.

15.     Based on the above, the mandamus relief sought should be

denied.

Respectfully Submitted,

/s/ *Baya Harrison*
Baya Harrison

PO Box 102
Monticello, FL 32344
Cell:  850/997-8469
Fla. Bar No. 099568
bayalaw@aol.com

CERTIFICATE OF SERVICE AND COMPLIANCE WITH ORDER TO SHOW CAUSE

I certify that per page 2 of the order to show cause, on this 13th day of February, 2018, I electronically e-filed in the e-portal of the Clerk of the Circuit Court for Leon County, Florida, the original of this response.  On February 14, 2018, I had mailed by U.S. Mail delivery a copy of the response to:  Mr. Trevon Dennis, DC# A51609, at Blackwater CI, 5914 Jeff Ates Road, Milton, FL 32583.  In addition, on this same date, I had mailed by U. S. mail delivery the original of a proposed order denying the petition along with stamped, self addressed envelopes to Hon. Terry Lewis, Circuit Judge, 301 S. Monroe Street, Tallahassee, FL 32301, and also mailed to Mr. Dennis by U. S. Mail Delivery a copy of that proposed order.

*/s/  Baya Harrison*

8